IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY GASTON, ) | No. C 10-4068 LHK (PR) |
| ) | |
| Petitioner, ) | ORDER GRANTING |
| ) | RESPONDENT'S MOTION TO |
| v. ) | DISMISS |
| ) | |
| ANTHONY HEDGEPETH, Warden, ) | |
| ) | |
| Respondent. ) | (Docket No. 19) |
| ) | |

Petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging two administrative decisions by the California Department of Corrections and Rehabilitation ("CDCR"). On November 9, 2011, the Court dismissed Claim 1 as procedurally defaulted and untimely. Thereafter, Respondent filed a motion to dismiss the remaining claim, Claim 2. Petitioner filed an opposition, and Respondent filed a reply. Upon review of the pleadings, the Court directed Petitioner to file a supplemental opposition, addressing a new argument that Respondent raised in his reply. Petitioner has filed the supplemental opposition, and Respondent has filed a supplemental reply. Petitioner has also filed a request for leave to file a supplemental declaration. That request is granted. After careful consideration of the relevant pleadings, the Court GRANTS Respondent's motion to dismiss.

**BACKGROUND**

On February 23, 2008, Petitioner was charged with a serious rule violation ("RVR") for indecent exposure, in violation of California Code of Regulations, Title 15, § 3007. (Pet. at 13, Ex. 14.) On June 3, 2008, at his RVR hearing, Petitioner was found guilty. (Pet., Ex. 14 at 1.) He was assessed 0 days loss of behavioral credits, 90 days loss of quarterly packages, 90 days loss of Friday visits, and he was referred to the Institutional/Unit Classification Committee for Program/Assignment review. (*Id.* at 4.)

**DISCUSSION**

Petitioner alleges that his 2008 rule violation for indecent exposure violated his right to due process because it was not supported by sufficient evidence. Respondent moved to dismiss the claim, arguing that it is barred by the statute of limitations, failed to invoke habeas jurisdiction, and failed to state a claim for relief. Because the Court concludes that Petitioner has failed to state a cognizable claim for relief, the Court finds it unnecessary to address Respondent's other arguments.

Respondent argues that the punishment Petitioner received does not amount to a liberty interest, and thus, fails to establish a cognizable due process claim. Even assuming that Petitioner's claim is appropriate in a habeas action, Petitioner fails to allege the deprivation of a protected liberty interest. The Fourteenth Amendment entitles a prisoner to certain due process protections when he is charged with a disciplinary violation, including the right to call witnesses. *See Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974)). However, these protections only attach when the disciplinary action implicates a prisoner's protected liberty interest. *Serrano*, 345 F.3d at 1078. Without a violation of any protected liberty interest here, it matters not whether Petitioner's claim is properly raised in a habeas action.

Interests protected by the Due Process Clause may arise from two sources – the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law.

*See Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Deprivations authorized by state law that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *See id.* at 477-87.  Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487.

In determining whether a restraint is an "atypical and significant hardship," *Sandin* suggests that courts should consider whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; the duration of the condition; the degree of restraint imposed; and whether the discipline will invariably affect the duration of the prisoner's sentence. *See Serrano*, 345 F.3d at 1078; *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).  If the deprivation is one of "real substance," *Wolff*'s procedural protections must be afforded.

Petitioner makes several arguments in an attempt to persuade the Court that the 2008 RVR guilty finding deprived him of a protected liberty interest.  First, Petitioner argues that the increase in his classification score due to the guilty finding at his disciplinary hearing will cause him to remain housed in Level Four, a higher security level of confinement.  (Opp. at 5.) However, an allegation that an inmate is housed at a higher level of security, without more, does not present an "atypical and significant hardship."  *See Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).  Petitioner has not demonstrated how the conditions in Level Four housing "differ significantly from those "imposed upon inmates in administrative segregation and protective custody" – a distinction *Sandin* held to be relevant."  *Id.*  Further, Petitioner has not shown how these conditions differ significantly from those at other levels, nor has he shown how this classification will "invariably affect the duration of his sentence."

Second, Petitioner asserts that after he was found guilty of the RVR, he was

Order Granting Respondent's Motion to Dismiss
G:\PRO-SE\SJ.LHK\HC.10\Gaston068mtd.wpd         3

1 automatically placed on a waiting list to be reassigned to a work assignment so that he may earn good-time or work-time credits.  (Supp. Opp. at 4.)  However, Petitioner does not have a right to earn work-time credits in prison,[1] and so his placement on the waiting list to be reassigned for work did not create an atypical or significant hardship.  *See, e.g.*, *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (a prison's failure to provide rehabilitative, vocational, and work programs does not constitute an Eighth Amendment violation).  Whatever liberty or property interests inhere in prison employment must be the product of state law, *see Sandin*, 515 U.S. at 484, and here, the State of California has affirmatively rejected creating a protected liberty or property interest in a prison job.  Cal. Const. art. XIV § 5(c) (stating that "[n]othing in this section [on labor relations in prisons shall be interpreted as creating a right of inmates to work"); *Toussaint v. McCarthy*, 801 F.2d 1080, 1095 (9th Cir. 1986) (finding that California Penal Code § 2933, the state statute that provides for work-time credits for prisoners, does not create a protected liberty interest).  Thus, there is no evidence that Petitioner's placement on the waiting list to be reassigned for work invariably resulted in an atypical or significant hardship in being denied privileges or the ability to accumulate work-time credits.

Third, Petitioner argues that he has been assigned an "R" suffix, which, according to Petitioner, essentially labels him as a rapist, and potentially places Petitioner's life in danger. (Supp. Opp. at 3.)  California Code of Regulations title 15, section 3377.1 provides that inmates are classified into nine custody designations to alert staff as to where an inmate may be housed and assigned, and the level of supervision required of the inmate.  An inmate may also be affixed an "R" or "S" suffix to indicate a history of sex offenses or need for single cell housing, respectively.  Generally, these regulations do not contain substantive predicates or mandatory language requiring any specific outcome when a custody classification or reclassification is

---

[1] Because Petitioner is classified under Credit Code 32, he can only receive a one-third credit reduction pursuant to California Penal Code § 2931 (Resp. Reply, Ex. 24), and changes in his work group do not affect his credits (*id.*, Ex. 24 at 8) ("Work Group changes do not affect credit for Credit Code 32 cases.").  Moreover, because Petitioner is serving an indeterminate life sentence, he is not entitled to work-time credits.  *See* Cal. Penal Code § 2933.  Thus, there is no indication that the Petitioner will lose the opportunity to earn good time or work-time credits due to his placement on the work assignment waiting list.

Order Granting Respondent's Motion to Dismiss
G:\PRO-SE\SJ.LHK\HC.10\Gaston068mtd.wpd            4

conducted. *See Thompson*, 490 U.S. at 461-62. Under certain circumstances, however, labeling a prisoner with a particular classification may implicate a liberty interest subject to the protections of due process. *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997) ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections."). Here, Petitioner has not alleged any facts that establish the existence of a liberty interest with respect to the assignment of the "R" suffix designation. Plaintiff can not claim any constitutional right to a particular prison classification arising directly from the Fourteenth Amendment, as inmates have no liberty interest in custody classification decisions. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987). The assignment of an "R" suffix simply does not "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Cooper v. Garcia*, 55 F.Supp.2d 1090, 1101 (S.D. Cal. 1999); *Johnson v. Gomez*, No. 95-20717, 1996 WL 107275, at *2-5 (N.D. Cal. 1996).

Fourth, Petitioner asserts that the RVR guilty finding will make it more difficult for him to receive parole. In *Sandin*, the Supreme Court rejected the notion that the potential future impact a finding of misconduct may have on a parole determination is sufficient to trigger due process protections. "The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." 515 U.S. at 487; *see also Meachum*, 427 U.S. at 229 n.8 (1976) (noting that possible effect on parole decision does not create liberty interest in confinement in particular prison).

Finally, to the extent Petitioner claims that the 2008 RVR led to an indeterminate term in the Security Housing Unit ("SHU"), it is without merit. In *Wilkinson v. Austin*, 545 U.S. 209, 223-25 (2005), the Supreme Court held that indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context." Because indefinite placement in California's SHU generally renders inmates ineligible for parole consideration, it appears that California prisoners

1  also have a liberty interest in not being placed indefinitely in the SHU. *Accord id.* at 224-25
2  (necessity of harsh conditions in light of danger that high-risk inmates pose to prison officials
3  and other inmates does not diminish conclusion that conditions rise to a liberty interest in their
4  avoidance).

5       Here, Petitioner's placement in the SHU was not indefinite. In addition, it is clear that
6  Petitioner's SHU housing did not result solely – if at all – from the challenged disciplinary
7  finding. The evidence shows that Petitioner was placed into the administrative segregation unit
8  on from February through May 2008, between the time Petitioner was charged with the RVR,
9  and his hearing. (Resp.'s Exs. 29-31.) Although Petitioner does not specify the challenged time
10 period in which he was in the SHU, Respondent notes that Petitioner was housed in the SHU
11 from August 2010 through March 2012, based on several other rule violation reports he received
12 after the 2008 RVR for indecent exposure. For example, in 2009, Petitioner received an RVR
13 for possession a deadly weapon. (Resp. Supp. Reply, Exs. 42, 44.) In January 2010, Petitioner
14 received an RVR for indecent exposure. (*Id.*) In June 2010, Petitioner received an RVR for
15 threats of violence. (*Id.*, Ex. 43.) And, in 2011, while in the SHU, Petitioner received another
16 RVR for indecent exposure. (*Id.*, Ex. 35.) In addition, it is apparent that Petitioner's initial
17 placement into the SHU in August 2010 resulted after the Institutional Classification Committee
18 reviewed his papers, and noted that Petitioner had "two SHU-able RVR's," including the 2009
19 possession of a deadly weapon, and the 2010 indecent exposure. (*Id.*, Ex. 41.) In other words,
20 the challenged, underlying 2008 guilty finding did not result in Petitioner's indefinite placement
21 into the SHU. (*Id.*, Exs. 42, 44.) Thus, it did not result in an atypical and significant hardship.

## CONCLUSION

23      Respondent's motion to dismiss is GRANTED for failure to state a cognizable claim for
24 relief. Petitioner has failed to make a substantial showing that his claim amounted to a denial of
25 his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claim
26 debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate
27 of appealability is warranted in this case.
28      The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: 9/6/12

LUCY H. KOH
United States District Judge